STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-685

```
                              *
ELIZABETH ANDERSON,          *
                              *
              Plaintiff       *
                              *
    v.                        *         ORDER
                              *
                              *
CIGNA HEALTHCARE OF          *
MAINE                         *
                              *
              Defendant       *
                              *
```

This case comes before the Court on Plaintiff's Motion to Amend her Complaint; Defendant's Motion for Judgment on the Pleadings dismissing Count I in part, and Count II in its entirety; Defendant's Motion to Excuse Late Filing; and Plaintiff's Motion to Strike Affidavits and Other Evidence Outside Pleadings.

## FACTUAL BACKGROUND

Plaintiff Elizabeth Anderson's complaint alleges the following facts. Anderson contracted with Defendant Cigna to provide her with health insurance. Anderson suffers from chronic migraine headaches. Her condition is treated with prescription medications Amerge and Relpax. Anderson's physician prescribed 54 tablets of Amerge for 90 days. For approximately seven months, Cigna provided coverage for only 27 tablets of Amerge. On August 29, 2003, Anderson's physician requested authorization from Cigna for surgery by an out-of-network physician to remove a morphine infusion spinal pump. On September 8, 2003, Cigna denied coverage for this procedure. Anderson

appealed this decision on September 16, 2003. Following the appeal, Cigna approved the surgery on October 8, 2003.

On November 10, 2004, Anderson served Cigna with a complaint. She asserts a violation of the Unfair Claims Settlement Practices Act (Count I), and breach of contract (Count II). On December 13, 2004, Cigna filed its answer.[1] On May 4, 2005, Anderson received a copy of a medication order form that her physician sent to Cigna. The order form indicated that the physician requested 54 tablets of Amerge for 90 days. Earlier, during discovery, Cigna produced a copy of the same order form that reduced the number of tablets from 54 to 27. Based on this information, on May 10, 2005, Anderson filed a motion to amend her complaint to include a count of fraudulent misrepresentation and concealment. On June 1, 2005, Cigna filed an untimely opposition to Anderson's motion to amend, and a motion for judgment on the pleadings. On the same date, Cigna filed a motion to excuse the late filing of its opposition motion to Anderson's motion to amend. On June 8, 2005, Anderson filed a motion to strike the evidence outside the pleadings attached to Cigna's opposition to Anderson's motion to amend.

## DISCUSSION

Preliminarily, Cigna's motion to excuse late filing based on Cigna's attorney's good faith belief that the clerk's office closes at 4:30 p.m. is **GRANTED**.

A.    **Motion to Strike Evidence Outside the Pleadings when Considering Anderson's Motion to Amend.**

Anderson argues that exhibits C, D, E, and F, that Cigna attached to its

---

[1] Anderson agreed to the late filing of the answer.

opposition to Anderson's motion to amend her complaint, should not be considered in ruling on her motion to amend because they constitute evidence outside of the pleadings. Cigna argues that the exhibits should be considered because they are central to Anderson's amended complaint and they demonstrate that Anderson's factual allegations are groundless.

Anderson relies on *Glynn v. City of South Portland*, 640 A.2d 1065 (Me. 1994), for the proposition that the standard of review for a motion to dismiss and a motion to amend is one in the same. As such, Anderson relies on the general rule that evidence outside the pleadings is not considered on a motion to dismiss. Cigna piggybacks this interpretation of *Glynn* to argue that notwithstanding the general rule, the Moody exception applies to a motion to dismiss to admit extraneous evidence that is central to the claim. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43, 47.[2]

This Court must first address the parties' analysis of *Glynn*. In *Glynn*, the Law Court affirmed the trial court's denial of a motion to amend where the proposed amendment sought a declaratory judgment to determine "what provisions of the State election law apply to the conduct of elections by Defendant." 640 A.2d at 1066. Relying on a previous holding that declaratory judgments are inappropriate if the purpose is to obtain a declaration that certain past conduct was or was not violative of a particular state law, the Court found that the proposed amendment "presented no existing controversy." *Id.* at 1067 (citing *District Attorney v. City of Brewer*, 543 A.2d 837, 839 (Me. 1988).

---

[2] The Moody exception permits certain extraneous documents such as official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, to be considered when deciding a motion to dismiss without converting the motion into a motion for summary judgment. *Moody*, 2004 ME 20, ¶ 10, 843 A.2d at 47.

Both parties erroneously interpreted "presented no existing controversy," in connection with a motion to amend to mean that the standard of review for a motion to amend is the same as a motion to dismiss. Contrary to the belief of both parties, the Court did not say that the standard of review for a motion to amend is the same as the standard of review for a motion to dismiss. At most, the *Glynn* Court added another ground for a trial court to consider when deciding a motion to amend a complaint,[3] albeit similar to a ground for a motion to dismiss. Because the standard of review for a motion to amend is not the same as the standard of review for a motion to dismiss, Cigna's argument that the exception applies is rejected.[4]

The Court will not review evidence outside the pleadings when deciding the motion to amend. Anderson's motion to strike is **GRANTED**.

## B. Motion to Amend Complaint

Anderson argues that the motion to amend should be granted to include a count of fraudulent misrepresentation and concealment. She contends that at the outset, Cigna represented to her that they denied her an additional 27 tablets of medication because her physician requested a reduced amount. However, new evidence has come to light during discovery indicating that Cigna, not Anderson's physician, reduced the medication.[5] Cigna opposes the motion

---

[3] A narrow interpretation would be that the Law Court added another ground to consider when deciding a motion to amend that includes a proposed declaratory judgment that past conduct was or was not violative of a particular state law.

[4] The Court does not decide whether the moving party ultimately prevails on its claim on a motion to amend as it does on a motion to dismiss.

[5] Anderson requested documents concerning this case from her physician at the beginning of discovery. However because it was the physician's practice to provide office notes and medical records in response to these requests, the physician did not turn over correspondence with Cigna. In that correspondence, Anderson discovered a medication order form that her physician completed and sent to Cigna.

arguing that Anderson provided insufficient factual support for the proposed amendment and the new claims fail to state a legally viable claim.

A party may amend the party's pleading "at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." M. R. Civ. P. 15(c). Courts should freely allow an amendment to a complaint except for bad faith, dilatory tactics, or undue delay resulting in undue prejudice to the opponent. *Longley v. Knapp, 1998 ME 142, ¶ 19, 713 A.2d 939, 945.* The philosophy behind this liberal rule is that "a party should not be precluded by technicalities of pleading from presenting his claim or defense on its merits unless the pleadings have misled the opposing party to his prejudice." 1 FIELD, MCKUSICK & WROTH, MAINE CIVIL PRACTICE § 15.3 at 302-03 (2d ed. 1981) (noting that prejudice means more than an increased likelihood of defeat in the litigation if the amendment is granted). In light of this standard, the consideration of whether to allow an amendment does not require the Court to decide whether the moving party can ultimately prevail on its respective claim. *Bangor Motor Company v. Chapman, 452 A.2d 389, 393 (Me. 1982).*

Procedurally, a party seeking to amend its complaint to include a fraud count must provide 1) a description of the fraud with particularity in its motion to amend and 2) a draft order granting it permission to include the count of fraud. M.R. Civ. P. 7(b)(3); M.R. Civ. P. 9(b).

The pertinent inquiry is whether Anderson's motion to amend caused undue delay resulting in undue prejudice to Cigna. This analysis focuses on the temporal nature of the motion. In *Bangor Motor Company,* the Court found that there was no undue delay when a motion to amend the complaint was made

during the pre-trial stage of litigation. 452 A.2d at 393. By contrast, in *Spickler v. York*, 566 A.2d 1385, 1389 (Me. 1989), the Court held that granting the moving party's motion to amend the complaint on the third day of trial prejudiced the opponent by denying an opportunity to prepare a defense.

Here, Anderson filed a motion to amend in the pre-trial discovery stage of litigation. She did not delay in filing the motion. In fact, she filed the motion six days after she received the allegedly altered medication order form. Moreover, when the motion was made, Cigna had three more months of discovery to prepare a defense. Therefore, it cannot be said that there has been undue delay resulting in prejudice to the Cigna.

Furthermore, Anderson has complied with the procedural rules for amending her complaint to include a count of fraud. First, Anderson asserts a count of fraud with particularity in her motion. Specifically, she asserts that Cigna altered a material form sent by Anderson's physician indicating the prescribed dosage of medication, while at the same time maintaining that the physician reduced the dosage. Anderson contends that she suffered greatly due to not having the medication prescribed by her physician. Second, Anderson included a draft order with her motion.

Therefore, because it is not this Court's role to decide whether Anderson will ultimately prevail on her claim, justice requires that Anderson be permitted to amend her complaint to include a count of fraud. Anderson's motion to amend is **GRANTED**.

## C. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings should be treated as a motion to dismiss. *Stevens v. Bouchard*, 532 A.2d 1028 (Me. 1987); M.R. Civ. P. 12(c). The

allegations of the complainant are viewed as true for the purposes of the motion in a light most favorable to the plaintiff. *In re Wage Pay Litigation*, 2000 ME 162 P3, 52 A.2d 217, 220. Thus, a motion to dismiss is properly granted when it appears beyond doubt that the plaintiff is entitled to no relief under the facts that might be proved in support of the claim. *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996).

Cigna argues that Count I should be dismissed to the extent is seeks punitive damages and injunctive relief under the Maine Unfair Claims Settlement Practices Act ("UCSPA"), and that Count II should be dismissed because breach of contract claims are preempted by the Maine Health Improvement Act ("HPIA").

1.    The UCSPA Does Not Provide For Punitive Damages?

The UCSPA states that a person injured under the Act may "bring a civil action and recover damages." 24-A M.R.S.A. § 2436-A. Anderson argues that because the statute is remedial in nature, the word "damages" should be interpreted liberally to include punitive damages. However, Cigna argues that the statute is penal in nature and therefore must be strictly construed to give meaning to the express language of the Act. See *Burne v. John Hancock Mut. Life Ins. Co.*, 403 A.2d 775 (Me. 1979).

In *Burne*, the Law Court held that "the provision within [24-A M.R.S.A. §] 2436 for interest at a rate of one and a half percent per month upon overdue [undisputed] claims causes the statute to be penal in nature and necessarily invokes a strict construction analysis." *Id.* at 777. Similarly, § 2436-A contains a provision that allows an insured recovery for interest on damages at a rate of one and a half percent per month when an insurer is found in violation of the Act.

Because these two sections follow each other in the insurance code and contain a similar provision that charges interest for violating the Act, it follows that both sections are penal in nature and must be strictly construed. Therefore, a strict construction of the word damages does not include recovery of punitive damages. Cigna's motion to dismiss Count I to the extent it seeks punitive damages is **GRANTED**.

2.     Anderson Cannot Seek Injunctive Relief Under The UCSPA

The UCSPA specifically states that the Act does not limit or prohibit any other claim or cause of action a person has against an insurer. 24-A M.R.S.A. § 2336-A (3). As such, a person may seek injunctive relief against an insurer "where there is not a plain, adequate and complete remedy at law." 14 M.R.S.A. § 6051(13). Anderson seeks injunctive relief on behalf of herself and all Cigna members, to force Cigna to comply with Maine's Health Care Accountability Regulations and to review its records and inform any member that may have a potential claim against Cigna for violations of this Act. Cigna argues that Anderson does not have standing to assert a claim for injunctive relief.

Standing requires a "sufficient personal stake in the controversy, at the initiation of the litigation, to seek a judicial resolution of the controversy." *Madore v. Maine Land Use Regulation Comm'n*, 1998 ME 178, ¶ 8, 715 A.2d 157, 160. It also requires a party to demonstrate that the challenged action constitutes "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

First, Anderson has an adequate remedy at law under the UCSPA that, if successful, will provide her with relief. Second, Anderson cannot demonstrate

an invasion of a legally protected interest because she was no longer a member of Cigna at the initiation of litigation. In essence, her claim for relief for third parties is based solely on conjecture. Finally, the injunction she seeks, if issued, would provide no relief to her. Therefore, Cigna's motion to dismiss Count I to the extent it seeks injunctive relief is **GRANTED**.

3.     Anderson's Breach of Contract Claim is Preempted by HPIA

Cigna argues that Anderson's breach of contract claim is preempted by HPIA because the complaint challenges a "health care treatment decision," to which HPIA provides the sole and exclusive remedy. Anderson argues that Cigna's denial of benefits for Anderson's full prescription and its initial denial of coverage for the out-of-network physician to perform surgery were merely coverage decisions, not health care treatment decisions.

HPIA provides that:

> [t]he cause of action under this section is the *sole and exclusive remedy* under state law for an enrollee against a carrier for its health care treatment decisions that affect the quality of the diagnosis, care or treatment provided to an enrollee except that this subsection may not be construed to prohibit an enrollee or an enrollee's authorized representative from seeking other remedies specifically available under other provisions of this Title.

24-A M.R.S.A. § 4313 (13). (emphasis added).

HPIA defines a health care treatment decision as:

> [a] decision regarding diagnosis, care or treatment when medical services are provided by a health plan, or *a benefits decision involving medically necessary health care*, preexisting condition determinations and determinations regarding experimental or investigational services.

24-A M.R.S.A. § 4301-A(6) (emphasis added).

It is clear from the express language of the statute that the legislature intended HPIA to be the sole and exclusive remedy for an enrollee against a

carrier for an adverse health care treatment decisions. The pertinent inquiry then is whether Cigna's denial of prescriptions drugs and surgical procedures amounted to health care treatment decisions. According to Anderson, an insurer can make a health care treatment decision only if the decision is based on a medical determination concerning the care requested by the patient's physician. As such, she argues that a mere denial of coverage is not based on a medical determination and therefore is not a health care treatment decision.

Health insurance carriers are in the business of approving or denying coverage for prescriptions or medical procedures. HPIA recognizes this fact by defining a health care treatment decision, in part, as "a benefits decision involving medically necessary health care." 24-A M.R.S.A. § 4301-A(6). Cigna's decisions to deny prescription coverage and deny surgery were both benefits decisions involving medically necessary health care. To require health insurance carriers to base their decisions on medical determinations is not only beyond the express language of the statute, but would frustrate the purpose of HPIA.

Cigna's motion to dismiss Count II of Anderson's complaint is **GRANTED**.

DATE: _March 27, 2005_

_____
Justice, Superior Court

PETER THOMPSON ESQ
217 COMMERCIAL STREET SUITE 200
PORTLAND ME 04101

~ P\

JOHN AROMANDO ESQ
ONE MONUMENT SQUARE
PORTLAND ME 04101